Daniel E. Birkhaeuser (California Bar No. 136646)
Jennifer S. Rosenberg (California Bar No. 121023)
BRAMSON, PLUTZIK, MAHLER &
  BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

E-filing

David Boies, III
Timothy D. Battin
Ian Otto
Nathan Cihlar
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
Telephone: (703) 764-8700
Facsimile: (703) 764-8704

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS WIEBE, BENJAMIN NORTHWAY, LINDSEY MORGAN, JOANNE MYLES, MARTHA MULVEY, ANTHONY CARDINALE, KELLY FAHNER, DONNA JEANNE FLANAGAN, CHRISTOPHER BESSETTE, DONNA FAHNER, MICHAEL CHEK and JAI PAGUIRIGAN on behalf of themselves and all others similarly situated in the States of the District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New Mexico, New York, North Carolina, South Dakota, Vermont, West Virginia and Wisconsin, | CIVIL ACTION NO. <br><br> C07-05332 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD; SAMSUNG SEMICONDUCTOR, INC.; SANDISK CORPORATION; STMICROELECTRONICS, N.V.; | |

1  STMICROELECTRONICS, INC.;
   HYNIX SEMICONDUCTOR, INC.;
2  HYNIX SEMICONDUCTOR
   AMERICA, INC.; MICRON
3  TECHNOLOGY, INC.; MICRON
   SEMICONDUCTOR PRODUCTS,
4  INC.; RENESAS TECHNOLOGY
   CORP.; RENESAS TECHNOLOGY
5  AMERICA, INC.; TOSHIBA
   CORPORATION; TOSHIBA
6  AMERICA CORPORATION;
7  TOSHIBA AMERICA ELECTRONIC
   COMPONENTS, INC.; HITACHI,
8  LTD.; HITACHI AMERICA, LTD.;
   HITACHI ELECTRONIC DEVICES
9  (USA), INC.; MITSUBISHI ELECTRIC
   CORP.; MITSUBISHI ELECTRIC &
10  ELECTRONICS USA, INC.; MOSEL
   VITELIC, INC.; MOSEL VITELIC
11  CORP.; WINBOND ELECTRONICS
   CORP.; WINBOND ELECTRONICS
12  CORPORATION AMERICA; and
13  JOHN DOES 1-100,
14
15          Defendants.
16              **CLASS ACTION COMPLAINT**
17      Plaintiffs Travis Wiebe, Benjamin Northway, Lindsey Morgan, Joanne Myles, Martha
18  Mulvey, Anthony Cardinale, Kelly Fahner, Donna Jeanne Flanagan, Christopher Bessette, Donna
19
20  Fahner, Michael Chek and Jai Paguirigan hereby bring this action on behalf of themselves and all
21  other similarly situated persons and entities who indirectly purchased NAND flash memory
22  integrated circuits ("Flash Memory") during a period beginning no later than January 1, 1999 and
23  continuing until the present (the "Class Period"). For purposes of this Complaint, Flash Memory
24  excludes all types of static random access memory ("SRAM") or dynamic random access memory
25  ("DRAM") sold during the Class Period.
26      Plaintiffs seek federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26
27  for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to recover damages under state

antitrust, consumer protection, unfair trade, and/or deceptive trade practices laws, common law

principles of restitution, disgorgement, unjust enrichment, as well as to recover the costs of suit,

including reasonable attorneys fees, for the injuries that Plaintiffs and all others similarly situated

sustained as a result of the Defendants' conspiracy to fix, raise, maintain and/or stabilize the prices

of Flash Memory. Plaintiffs, upon personal knowledge as to their own acts and status, and upon

information and belief as to all other matters, allege the following:

## INTRODUCTION

1.      This case arises out of a long-running conspiracy extending from January 1, 1999

and continuing until the present, among Defendants and their co-conspirators, with the purpose and

effect of fixing prices, allocating market share, and committing other unlawful and/or deceptive

trade practices designed to inflate, stabilize or otherwise maintain the prices of Flash Memory sold

indirectly to Plaintiffs and other indirect purchasers throughout the United States, including in the

District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New Mexico, New

York, North Carolina, South Dakota, Vermont, West Virginia and Wisconsin.

2.      In Count One of this Complaint, Plaintiffs, on behalf of themselves and all United

States indirect purchasers of Flash Memory, seek injunctive relief against Defendants based upon

allegations of a conspiracy to restrain trade for Flash Memory in violation of Section 1 of the

Sherman Act, 15 U.S.C. § 1.

3.      Counts Two through Twenty-One are brought by Plaintiffs seeking damages and

other relief on behalf of themselves and those members of the classes who indirectly purchased

Flash Memory in the District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota,

New Mexico, New York, North Carolina, South Dakota, Vermont, West Virginia and Wisconsin

(the "Indirect Purchaser States").

4.      Defendants and their co-conspirators have formed an international cartel to illegally

restrict competition in the Flash Memory market, targeting and severely burdening consumers throughout the United States, including the Indirect Purchaser States. During the Class Period, the conspiracy has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including the Indirect Purchaser States. Defendants' conspiracy has included communications and meetings in which Defendants agreed to eliminate competition and fix the prices and allocate markets for Flash Memory.

5.    The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases of Flash Memory throughout the United States, including the Indirect Purchaser States.

6.    The acts by Defendants in furtherance of the conspiracy included the following wrongful conduct and horizontal agreements:

(a)    Participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to fix prices for Flash Memory;

(b)    Participating in meetings and conversations in which Defendants and their co-conspirators allocated markets and customers for Flash Memory;

(c)    Participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to refrain from engaging in competitive bidding or to submit complementary and non-competitive bids for particular contracts to supply Flash Memory to various consumers;

(d)    Exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e)    Issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

CLASS ACTION COMPLAINT
53107

3

(f)    Facilitating, effectuating, implementing, monitoring, and concealing the contract, combination, and conspiracy to raise the prices of Flash Memory sold.

## JURISDICTION & VENUE

7.    This Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337, and by Section 16 of the Clayton Act, 15 U.S.C. § 26. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy. The Court also has jurisdiction over the state claims under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, and there are members of the classes who are citizens of a state different from the Defendants.

8.    Without limiting the generality of the foregoing, Defendants (directly or through agents who at the time were acting with actual and/or apparent authority and within the scope of such authority) have:

(a)    Transacted business in the Indirect Purchaser States;

(b)    Contracted to supply and/or obtain services and/or goods in the Indirect Purchaser States;

(c)    Intentionally availed themselves of the benefits of doing business in the Indirect Purchaser States;

(d)    Produced, promoted, sold, marketed and/or distributed their products and/or services in the Indirect Purchaser States and have thereby purposefully profited from their access to markets in the Indirect Purchaser States;

(e)    Caused tortious damage by acts or omissions in the Indirect Purchaser States;

(f)    Caused tortious damage in the Indirect Purchaser States by acts or omissions committed outside such jurisdictions while:

(i.)    regularly doing or soliciting business in such jurisdictions; and/or,
(ii.)    engaging in other persistent courses of conduct within such jurisdictions; and/or,
(iii.)    deriving substantial revenue from goods used or consumed or services rendered in such jurisdictions;

(g)     Committed acts and omissions which Defendants knew would cause injury (and, in fact, did cause injury) in the Indirect Purchaser States to Plaintiffs and members of the Indirect Purchaser States' classes while:

(i.)     regularly doing or soliciting business in such jurisdictions; and/or,

(ii.)     engaging in other persistent courses of conduct within such jurisdictions; and/or,

(iii.)     deriving substantial revenue from goods used or consumed or services rendered in such jurisdictions;

(h)     Conspired with others who did have the requisite minimum contacts with the Indirect Purchaser States; and/or

(i)     Otherwise had the requisite minimum contacts with the Indirect Purchaser States, such that under the circumstances it is fair and reasonable to require Defendants to come to this Court to defend this action.

9.     Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391, because one or more of the Defendants reside, is licensed to do business, or is found or transacts business in this District, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims arose in this District.

10.     The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States, including the Indirect Purchaser States.

## PARTIES

### A.     Plaintiffs

11.     Plaintiff Travis Wiebe is a resident of the District of Columbia. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

12.     Plaintiff Benjamin Northway is a resident of Iowa. During the Class Period,

Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

13.    Plaintiff Lindsey Morgan is a resident of Kansas. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

14.    Plaintiff Joanne Myles is a resident of Maine. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

15.    Plaintiff Martha Mulvey is a resident of Minnesota. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

16.    Plaintiff Anthony Cardinale is a resident of New Mexico. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

17.    Plaintiff Kelly Fahner is a resident of New York. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries,

divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

18. Plaintiff Donna Jeanne Flanagan is a resident of North Carolina. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

19. Plaintiff Christopher Bessette is a resident of South Dakota. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

20. Plaintiff Donna Fahner is a resident of Vermont. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

21. Plaintiff Michael Chek is a resident of West Virginia. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

22. Plaintiff Jai Paguirigan is a resident of Wisconsin. During the Class Period, Plaintiff indirectly purchased Flash Memory from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated

1    prices for Flash Memory and has been injured by reason of the illegal conduct alleged herein.

2    **B.    Defendants**

3        23.    Defendant Samsung Electronics Co., Ltd. is a South Korean corporation with its

4    principal place of business at Samsung Main Building 250, 2-ga, Taepyong-ro Chung-gu, Seoul,

5    South Korea. Samsung Electronics Co., Ltd. produced, promoted, sold, marketed, and/or

6    distributed Flash Memory to consumers throughout the United States, including the Indirect

7    Purchaser States, during the Class Period.

8        24.    Defendant Samsung Semiconductor, Inc. is a wholly owned and controlled

9    subsidiary of Defendant Samsung Electronics Co., Ltd. with its principal place of business at 3655

10   North First St., San Jose, CA 95134. Samsung Semiconductor, Inc. produced, promoted, sold,

11   marketed, and/or distributed Flash Memory to consumers throughout the United States, including

12   the Indirect Purchaser States, during the Class Period. Defendants Samsung Electronics Co., Ltd.

13   and Samsung Semiconductor, Inc. are collectively hereinafter referred to as "Samsung".

14       25.    Defendant Hynix Semiconductor, Inc. is a South Korean corporation with its

15   principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyongki-do, Korea. Hynix

16   Semiconductor, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to

17   consumers throughout the United States, including the Indirect Purchaser States, during the Class

18   Period.

19       26.    Defendant Hynix Semiconductor America, Inc. is a wholly owned and controlled

20   subsidiary of Defendant Hynix Semiconductor, Inc., with its principal place of business at 3101

21   North First St., San Jose, CA 95134. Hynix Semiconductor America, Inc. produced, promoted,

22   sold, marketed, and/or distributed Flash Memory to consumers throughout the United States,

23   including the Indirect Purchaser States, during the Class Period. Defendants Hynix

24   Semiconductor, Inc. and Hynix Semiconductor America, Inc. are collectively hereinafter referred

to as "Hynix".

27.     Defendant Micron Technology, Inc. is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, ID 83716. Micron Technology, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

28.     Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of Defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, ID 83716. Defendant Micron Semiconductor Products, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc. are collectively hereinafter referred to as "Micron".

29.     Defendant SanDisk Corporation is a Delaware corporation with its principal place of business at 601 McCarthy Blvd., Milpitas, CA 95035. SanDisk Corporation produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

30.     Defendant STMicroelectronics, N.V. is a business entity organized under the laws of the Netherlands, with its principal place of business at 39, Chemin du Champ des Filles, C.P. 21, CH 1228 Plan-Les-Ouates, Geneva, Switzerland. STMicroelectronics N.V. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

31.     Defendant STMicroelectronics, Inc. is a Delaware corporation and is a wholly owned and controlled subsidiary of Defendant STMicroelectronics, N.V. with its principal place of business at 1310 Electronics Dr., Carrollton, TX, 75006-7005. STMicroelectronics, Inc. produced,

promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants STMicroelectronics N.V. and STMicroelectronics, Inc. are collectively hereinafter referred to as "STM".

32.    Defendant Toshiba Corporation is a Japanese corporation with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001 Japan. Toshiba Corporation produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

33.    Defendant Toshiba America Corporation is a wholly owned and controlled subsidiary of Defendant Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110, New York City, NY 10020. Toshiba America Corporation produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

34.    Defendant Toshiba America Electronic Components, Inc. is a wholly owned and controlled subsidiary of Defendant Toshiba Corporation with its principal place of business at 19900 MacArthur Blvd., Suite 400, Irvine, CA 92612. Toshiba America Electronic Components, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Toshiba Corporation, Toshiba America Corporation, and Toshiba America Electronic Components, Inc. are collectively hereinafter referred to as "Toshiba".

35.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

36.     Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Defendant Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, CA 94005. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

37.     Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi, Ltd. with its principal place of business at 575 Mauldin Rd., Greenville, SC 29607. Hitachi Electronic Devices (USA), Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Hitachi, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc. are collectively hereinafter referred to as "Hitachi".

38.     Defendant Mitsubishi Electric Corp. is a Japanese corporation with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310 Japan. Mitsubishi Electric Corp. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

39.     Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned subsidiary of Defendant Mitsubishi Electric Corp. with its principal place of business at 5665 Plaza Drive Cypress, CA 90630. Mitsubishi Electric & Electronics USA, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Mitsubishi Electric Corp. and Mitsubishi Electric & Electronics USA, Inc. are collectively hereinafter referred to as "Mitsubishi".

40.     Defendant Renesas Technology Corp. is a Japanese corporation with its principal

place of business at Marunouchi Building, 4-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-6334. Renesas Technology Corp. was established on or about April 1, 2003, as a joint venture between Hitachi and Mitsubishi. Renesas Technology Corp. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

41.    Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of Defendant Renesas Technology Corp. with its principal place of business at 450 Holger Way, San Jose, CA 95134. Renesas Technology America, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Renesas Technology Corp. and Renesas Technology America, Inc. are collectively hereinafter referred to as "Renesas".

42.    Defendant Mosel Vitelic, Inc. is a Taiwanese corporation with its principal place of business at No. 19 Li Hsin Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan. Mosel Vitelic, Inc. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

43.    Defendant Mosel Vitelic Corp. is a wholly owned and controlled subsidiary of Defendant Mosel Vitelic, Inc. with its principal place of business at 3910 North First Street, San Jose, CA 95134. Mosel Vitelic Corp. produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Mosel Vitelic, Inc. and Mosel Vitelic Corp. are collectively hereinafter referred to as "Mosel Vitelic".

44.    Defendant Winbond Electronics Corp. is a Taiwanese corporation with its principal place of business at 4, Creaton Road, 111, Science Based Industrial Park, Hsinchu, Taiwan. Winbond Electronics Corp. produced, promoted, sold, marketed, and/or distributed Flash Memory

to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period.

45.     Defendant Winbond Electronics Corp. America is a wholly owned and controlled subsidiary of Defendant Winbond Electronics Corp. with its principal place of business at 2727 North First Street, San Jose, CA 95134. Winbond Electronics Corp. America produced, promoted, sold, marketed, and/or distributed Flash Memory to consumers throughout the United States, including the Indirect Purchaser States, during the Class Period. Defendants Winbond Electronics Corp. and Winbond Electronics Corp. America are collectively hereinafter referred to as "Winbond".

46.     Whenever reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the corporation's management, direction, control, or business affairs. Moreover, Defendants acted as each other's agents or joint venturers with respect to their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as its parent company's agent for its parent's Flash Memory sales in the United States.

47.     The acts charged in this Complaint have been done by the aforesaid Defendants and were ordered and performed by the aforesaid Defendants' officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of said Defendants' business or affairs.

### ADDITIONAL DEFENDANTS

48.     As additional information may come to light, Plaintiffs reserve the right to add other Defendants as they become known to any one of them.

## CO-CONSPIRATORS

49.     Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiffs, participated as Co-Conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

50.     The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants named herein as John Does 1 through 100 are unknown to Plaintiffs at this time, and are therefore sued by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of John Does 1 through 100 when they become known to them.  Each of John Does 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

51.     The acts charged in this Complaint as having been done by Defendants and the Doe Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following Class (the "Nationwide Class"):

> All persons in the United States who indirectly purchased Flash Memory for their own use and not for resale from one or more of the Defendants during the Class Period, beginning no later than January 1, 1999 and continuing to the present.  Excluded from the Class are all federal, state, or local governmental entities; Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory directly from any Defendant or from any other manufacturer of Flash Memory.

53.     Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all

1    members of the following classes (collectively, the "Indirect Purchaser Classes" or collectively

2    with the Nationwide Class as the "Classes"):

3           DISTRICT OF COLUMBIA: All persons in the District of Columbia who indirectly
4           purchased Flash Memory manufactured and/or sold by one or more of the
            Defendants during the Class Period. Excluded from the Class are: all federal, state,
5           or local governmental entities; Defendants' subsidiaries and affiliates; all persons
            who purchased Flash Memory directly from any Defendant or from any other
6           manufacturer of Flash Memory (the "District of Columbia Indirect Purchaser
7           Class").

8           FLORIDA: All persons in Florida who indirectly purchased Flash Memory
            manufactured and/or sold by one or more of the Defendants during the Class Period.
9           Excluded from the Class are: all federal, state, or local governmental entities;
            Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
10          directly from any Defendant or from any other manufacturer of Flash Memory (the
11          "Florida Indirect Purchaser Class").

12          IOWA: All persons in Iowa who indirectly purchased Flash Memory manufactured
            and/or sold by one or more of the Defendants during the Class Period. Excluded
13          from the Class are: all federal, state, or local governmental entities; Defendants'
            subsidiaries and affiliates; all persons who purchased Flash Memory directly from
14          any Defendant or from any other manufacturer of Flash Memory (the "Iowa Indirect
15          Purchaser Class").

16          KANSAS: All persons in Kansas who indirectly purchased Flash Memory
            manufactured and/or sold by one or more of the Defendants during the Class Period.
17          Excluded from the Class are: all federal, state, or local governmental entities;
            Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
18          directly from any Defendant or from any other manufacturer of Flash Memory (the
19          "Kansas Indirect Purchaser Class").

20          MAINE: All persons in Maine who indirectly purchased Flash Memory
            manufactured and/or sold by one or more of the Defendants during the Class Period.
21          Excluded from the Class are: all federal, state, or local governmental entities;
            Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
22          directly from any Defendant or from any other manufacturer of Flash Memory (the
23          "Maine Indirect Purchaser Class").

24          MICHIGAN: All persons in Michigan who indirectly purchased Flash Memory
            manufactured and/or sold by one or more of the Defendants during the Class Period.
25          Excluded from the Class are: all federal, state, or local governmental entities;
            Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
26          directly from any Defendant or from any other manufacturer of Flash Memory (the
27          "Michigan Indirect Purchaser Class").

28          MINNESOTA: All persons in Minnesota who indirectly purchased Flash Memory

1   manufactured and/or sold by one or more of the Defendants during the Class Period.
2   Excluded from the Class are: all federal, state, or local governmental entities;
    Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
3   directly from any Defendant or from any other manufacturer of Flash Memory (the
    "Minnesota Indirect Purchaser Class").

4
    NEW MEXICO: All persons in New Mexico who indirectly purchased Flash
5   Memory manufactured and/or sold by one or more of the Defendants during the
    Class Period. Excluded from the Class are: all federal, state, or local governmental
6   entities; Defendants' subsidiaries and affiliates; all persons who purchased Flash
7   Memory directly from any Defendant or from any other manufacturer of Flash
    Memory (the "New Mexico Indirect Purchaser Class").

8
    NEW YORK: All persons in New York who indirectly purchased Flash Memory
9   manufactured and/or sold by one or more of the Defendants during the Class Period.
    Excluded from the Class are: all federal, state, or local governmental entities;
10  Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
11  directly from any Defendant or from any other manufacturer of Flash Memory (the
    "New York Indirect Purchaser Class").

12
    NORTH CAROLINA: All persons in North Carolina who indirectly purchased
13  Flash Memory manufactured and/or sold by one or more of the Defendants during
    the Class Period. Excluded from the Class are: all federal, state, or local
14  governmental entities; Defendants' subsidiaries and affiliates; all persons who
15  purchased Flash Memory directly from any Defendant or from any other
    manufacturer of Flash Memory (the "North Carolina Indirect Purchaser Class").

16
    SOUTH DAKOTA: All persons in South Dakota who indirectly purchased Flash
17  Memory manufactured and/or sold by one or more of the Defendants during the
    Class Period. Excluded from the Class are: all federal, state, or local governmental
18  entities; Defendants' subsidiaries and affiliates; all persons who purchased Flash
19  Memory directly from any Defendant or from any other manufacturer of Flash
    Memory (the "South Dakota Indirect Purchaser Class").

20
    VERMONT: All persons in Vermont who indirectly purchased Flash Memory
21  manufactured and/or sold by one or more of the Defendants during the Class Period.
    Excluded from the Class are: all federal, state, or local governmental entities;
22  Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory
23  directly from any Defendant or from any other manufacturer of Flash Memory (the
    "Vermont Indirect Purchaser Class").

24
    WEST VIRGINIA: All persons in West Virginia who indirectly purchased Flash
25  Memory manufactured and/or sold by one or more of the Defendants during the
    Class Period. Excluded from the Class are: all federal, state, or local governmental
26  entities; Defendants' subsidiaries and affiliates; all persons who purchased Flash
27  Memory directly from any Defendant or from any other manufacturer of Flash
    Memory (the "West Virginia Indirect Purchaser Class").

28

WISCONSIN: All persons in Wisconsin who indirectly purchased Flash Memory manufactured and/or sold by one or more of the Defendants during the Class Period. Excluded from the Class are: all federal, state, or local governmental entities; Defendants' subsidiaries and affiliates; all persons who purchased Flash Memory directly from any Defendant or from any other manufacturer of Flash Memory (the "Wisconsin Indirect Purchaser Class").

54.     Plaintiffs do not know the exact size of the Classes at the present time. However, Plaintiffs believe that due to the nature of the trade and commerce involved, there are at least hundreds of thousands of class members, geographically dispersed throughout the United States such that joinder of all class members would be impracticable.

55.     Plaintiffs' claims are typical of the claims of their respective Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of their respective Classes. Plaintiffs have retained competent counsel experienced in class action and complex antitrust and consumer protection litigation.

56.     Common questions of law and fact exist, including:

(a.)    Whether Defendants and their Co-Conspirators engaged in a contract, combination or conspiracy among themselves to fix, raise, maintain or stabilize the process of, or allocate the market of Flash Memory sold in the United States;

(b.)    The duration and extent of the contract, combination or conspiracy;

(c.)    Whether the Defendants and their Co-Conspirators were participants in the contracts, combinations or conspiracies alleged herein;

(d.)    Whether Defendants and their Co-Conspirators engaged in conduct that violated Section 1 of the Sherman act;

(e.)    Whether Defendants and their Co-Conspirators engaged in unlawful, unfair or deceptive contracts, combinations or conspiracies among themselves, express or implied, to fix, raise, maintain, or stabilize prices of Flash Memory sold in and/or distributed in the United States;

(f.) Whether the Defendants and their Co-Conspirators engaged in conduct in violation of the antitrust, consumer protection, unfair trade, and/or deceptive trade practices laws of the various Indirect Purchaser States as alleged below;

(g.) Whether the anticompetitive conduct of the Defendants and their Co-Conspirators caused prices of Flash Memory to be artificially inflated to non-competitive levels;

(h.) Whether the Defendants and their Co-Conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of the members of the Classes;

(i.) Whether Defendants and their Co-Conspirators fraudulently concealed the existence of their unlawful conduct;

(j.) Whether Plaintiffs and the Classes are entitled to injunctive relief; and

(k.) Whether Plaintiffs and other members of the Indirect Purchaser Classes were injured by the conduct of Defendants and, if so, the appropriate measure of damages.

57. These and other questions of law and fact are common to the Classes and predominate over any questions affecting only individual class members, including legal and factual issues relating to liability, damages, and restitution.

58. Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

(a.) It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

(b.) It would be virtually impossible for all members of the Classes to intervene as parties-plaintiff in this action;

(c.) It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

(d.) It is appropriate for treatment on a fluid recovery basis, which obviate any manageability problems; and

(e.) It will provide court oversight of the claims process, once Defendants'

1    liability is adjudicated.

2    59.    Defendants have acted on grounds generally applicable to the Classes, thereby

3    making final injunctive relief or corresponding declaratory relief appropriate with respect to each

4    class as a whole.

5

6    **FACTUAL ALLEGATIONS**

7    **Background and Applications of Flash Memory Chips**

8    60.    Flash Memory is a type of integrated circuit that can be electrically erased and

9    reprogrammed.  Flash Memory does not need continuous power to maintain the information stored

10   in the chip and is therefore considered "non-volatile".  Flash Memory is used in a wide array of

11   applications and products, including but not limited to memory cards and sticks, digital audio

12   players, camera phones and other cellular devices, portable USB storage devices, digital cameras,

13   video game consoles, handheld media devices, and computers.

14

15   61.    Flash Memory has long been used to manufacture small portable USB storage

16   devices (sometimes referred to as "jump drives" or "flash drives") which are commonly used to

17   transport data from one computer to another. New developments in Flash Memory technologies

18   include its development as a solid-state, long-term storage drive designed to replace traditional disk

19   drives. Solid-state flash drives require no moving parts, are lighter, quieter, more energy efficient and

20   considered more reliable than traditional disk drives. Samsung released the first Flash Memory based

21   PCs in May 2006 and other manufacturers have followed suit.

22

23   **Types of Flash Memory**

24   62.    NOR and NAND are the two primary types of nonvolatile memory chips found in

25   modern electronic devices and are used to store information after the device's power has been turned

26   off. NOR chips generally read information quicker than NAND chips. However, NAND chips

27   generally store and erase information faster than NOR chips.  Due to its higher density, lower cost,

28

faster write times, and long re-write expectancies, NAND flash memory is particularly well suited for media applications where large files of sequential data need to be loaded into memory quickly and repeatedly.

63.    NOR flash memory has traditionally been used to store relatively small amounts of executable code for personal handheld devices and cellular phones. However, the need for higher density, low cost memory has lead to greater use of NAND memory in these devices, particularly when these devices incorporate built-in cameras and streaming media functions.

**The Flash Memory Market**

64.    Throughout the Class Period, Defendants and their Co-Conspirators engaged in the business of manufacturing, marketing and selling Flash Memory throughout the United States. The Flash Memory market has grown from insignificant sales into a $16 billion dollar global market in less than ten years and is considered to be the fastest-growing technology in the history of the semiconductor market. Some estimates predict Flash Memory will displace DRAM as the leading semiconductor memory.

65.    Flash Memory market share leaders and their approximate sales revenue during the second quarter of 2007 were:

Samsung:    A 45.9% market share and 2007 second quarter revenue of approximately $1.4 billion.

Toshiba:    A 27.5% market share and 2007 second quarter revenue of approximately $828 million.

Hynix:    A 14.6% market share and 2007 second quarter revenue of approximately $440 million.

Micron:    A 5.4% market share and 2007 second quarter revenue of approximately $162 million.

STM:    A 2.3% market share and 2007 second quarter revenue of

approximately $70 million.

Renesas:    A 2.0% market share and 2007 second quarter revenue of

approximately $59 million.

66.    The top five manufacturers of Flash Memory control approximately 93.4% of the total

Flash Memory market share.

67.    The market for the manufacture and sale of Flash Memory is subject to high

manufacturing and technological barriers to entry.  Efficient fabrication plants are large and costly.

Flash Memory is subject to technological advancements requiring significant research and

development efforts and costs.

68.    Flash Memory is a homogenous product sold by Defendants and purchased by

Plaintiffs and members of the Classes primarily on the basis of price.

69.    Defendants sell Flash Memory through various channels, including to manufacturers

of electronic products and devices, and to resellers of products containing Flash Memory. These

electronic products and devices are then sold to consumers, directly or indirectly, and are not

altered during the course of sale.

**Defendants' Conduct**

70.    Defendants, through their officers, directors, managers and employees, participated in

meetings and conversations to discuss the prices of Flash Memory in the United States, and agreed to

charge and maintain prices of Flash Memory at specific levels, issuing price announcements and

quotations in accordance with the agreements reached.

71.    Price signaling was used by Defendants to maintain and police their cartel activities.  For

example, on March 20, 2006, Hynix warned investors that the prices of NAND Flash Memory could fall

as much as 50% for the year.  On March 21, 2006, Samsung reassured the market that the prices would

recover and stabilize.  By August 2006, prices reportedly stabilized, in part, as a result of reduced stocks from manufacturers. (*Electronic News*, August 9, 2006)

72.     Third-party information sources allow Defendants to contemporaneously track each other's Flash Memory prices, including websites such as http://www.dramexchange.com.

73.     Defendants communicated with one another about their intended Flash Memory prices from as early as 1999, and continue to do so throughout the Class Period.  Such communications are not mere happenstance or the mere sharing of public information, but instead, the Defendants contacted each other right before price moves and continuously collected competitive information. Defendants shared information with each other with the intent and effect of causing the price of Flash Memory to stabilize.

74.     Defendants maintained a pattern and practice of comparing notes on pricing for Flash Memory before pricing was established, and it was common for Defendants to contact one another to determine what price to charge.  These communications were sometimes referred to as surveying the market, or obtaining competitive data.

75.     Defendants agreed to price ranges for specific Flash Memory products and discussed how their prices would evolve thereafter.

76.     Defendants' employees regularly communicated with their Flash Memory competitors to discuss a variety of competitive topics, including:

> (a.)     The overall performance of the Flash Memory market (i.e. going up, down or staying constant);
>
> (b.)     The current pricing for particular Flash Memory products being charged by competitors; the production splits their companies intended to run for specific types of memory products; and
>
> (c.)     Where their companies intended to set prices for specific types of memory products in the future.

77.     There was an understanding among Defendants' sales agents and account representatives that the Flash Memory pricing information they exchanged would be passed along to their respective supervisors, who in turn had the authority to set Flash Memory prices for future sales.

78.     Defendants' purpose in exchanging current and future pricing information was to obtain the highest possible prices for Flash Memory from their customers, prices higher than they otherwise could have charged, and to delay price declines that are inevitable in the rapidly evolving memory market. This sharing of competitive information violates antitrust laws.

79.     At various times during the Class Period, the average price of Flash Memory declined due to market forces as well as cheating by certain conspirators. In response to those market forces, Defendants increased their efforts to fix or stabilize Flash Memory prices at supra-competitive levels, and enforced the ongoing conspiracy to delay or minimize downward pricing pressure.

80.     Defendants' membership in numerous trade organizations within the semiconductor industry is also one of many factors that facilitate Defendants' cartel activities. Many of the Defendants are members of the Joint Electron Device Engineering Council Solid State Technology Association, a standard setting group for solid-state technologies such as Flash Memory. In addition, Hynix and Micron are among the founding members of the Open NAND Flash Interface ("ONFI") group, whose purpose is to meet and discuss standards and production of NAND Flash Memory products. ONFI's membership includes defendants Hitachi, STM, Hynix, Micron, and Winbond. In 1995, the CompactFlash Association ("CompactFlash") was founded for the purpose of creating a non-profit, mutually beneficial means of promoting various forms of flash memory. CompactFlash membership includes Defendants Hitachi, Mitsubishi, Renesas, Samsung, Toshiba, Winbond and/or their affiliates. In 1997, CompactFlash held its first general meeting, and since that time has met on at least 17 different occasions at various industry conferences and trade-shows, including:

(a)    February 20, 1997 at the Photo Marketing Association ("PMA") '97 meeting in New Orleans;

(b)    March 10-11, 1997 at the First General Meeting in London;

(c)    January 8, 1998 at the International Consumer Electronics Show ("ICES") in Las Vegas, NV;

(d)    February 10, 1998 at PMA '98 in New Orleans, LA;

(e)    September 16, 1998 at Photokina '98 in Cologne, Germany;

(f)    September 30, 1998 at World PC Expo in Tokyo, Japan;

(g)    January 7, 1999 at the ICES in Las Vegas, NV;

(h)    February 18, 1999 at PMA '99 in Las Vegas, NV;

(i)    September 7, 1999 at World PC Expo '99 in Tokyo, Japan;

(j)    December 27, 1999 at the ICES '00 in Las Vegas, NV;

(k)    September 20, 2000 at Photokina '00 in Koln, Germany;

(l)    October 17, 2000 at World PC Expo '00 in Tokyo, Japan;

(m)    January 6, 2001 at the ICES '01 in Las Vegas, NV;

(n)    February 11, 2001 at PMA '01 in Orlando, FL;

(o)    January 8, 2002 at the ICES '02 in Las Vegas, NV;

(p)    September 25, 2002 at Photokina '02 in Koln, Germany;

(q)    October 16, 2002 at the World PC Expo in Tokyo, Japan;

(r)    September 17, 2003 at World PC Expo in Tokyo, Japan;

(s)    January 5, 2006 at the ICES '06 in Las Vegas, NV; and

(t)    Upon information and belief, plans to attend the January, 2007 ICES held in Las Vegas, NV.

81.    Another factor facilitating Defendants' cartel activities is the close proximity of several

Defendants' corporate headquarters. Defendants Hynix, Mosel Vitelic, Samsung, Winbond and Renesas all have corporate offices on the same street or in very close proximity. In addition, Defendants Mosel Vitelic and Winbond maintain corporate offices in the same industrial park in Hsinchu, Taiwan.

**United States Department of Justice Investigation**

82.    In September 2007 the United States Department of Justice ("DOJ") announced that it had begun an investigation into anticompetitive conduct within the Flash Memory industry. Several Defendants, including Samsung, Toshiba and SanDisk, have confirmed that they have received subpoenas from the DOJ and that they are cooperating with the investigation. Toshiba's spokeswoman stated that the DOJ investigation "appears to be...industry wide." Several industry experts have cited to the "unusual climb in spring and...summer [of 2007]" in the price of Flash Memory "after a steep fall in the first quarter of [2006]" as the basis for the DOJ's investigation into the Flash Memory industry.

83.    The semiconductor industry has come under scrutiny by federal authorities for alleged price-fixing in other semiconductor product markets. On information and belief, in October 2006 the Antitrust Division of the DOJ issued subpoenas to 23 companies in connection with an investigation examining "anti-competitive" cartel activity and practices in the SRAM industry. Those companies included Samsung, Hynix, Micron, Renesas, Toshiba, and Mitsubishi. Cartel activity in the SRAM market was believed to have occurred from approximately 1998 through at least 2005.

84.    The SRAM investigation follows another recent DOJ investigation for alleged price-fixing in the DRAM market. Several of those companies under investigation, including Defendants Hynix, Samsung, and Elpida, have already plead guilty to and/or paid fines related to their unlawful activities. Defendant Micron, a major Flash Memory producer, was the amnesty applicant in the DRAM price-fixing investigation.

85.    The pervasiveness of cartel activity among the Defendants and others within the

1
2.
3
4
5
6

semiconductor industry has been noted by commentators and industry analysts. Richard Gordon, an analyst with Gartner, Inc., has been quoted as stating " 'If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue...because there are a relatively few number of suppliers in the chip industry and an open flow communication between competitors and customers, who may not define price fixing the same way the DOJ does.' "

7

## TRADE AND COMMERCE

8
9
10

86.    The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of Flash Memory throughout the United States, including the Indirect Purchaser States.

11
12
13
14
15
16
17
18

87.    During the Class Period, Defendants manufactured, sold and shipped substantial quantities of Flash Memory to manufacturing businesses and consumers throughout the United States, including the Indirect Purchaser States.  Those businesses resold and/or incorporated the Flash Memory into other products including, but not limited to, memory cards, USB storage devices, mobile wireless technologies, digital audio devices, digital cameras, personal computers, and video game consoles and then sold those goods to businesses and consumers throughout the United States, including the Indirect Purchaser States.

19
20
21
22
23
24

88.    The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of Flash Memory throughout the United States, including the Indirect Purchaser States.

25
26
27
28

89.    The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

(a)    Participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their

Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for Flash Memory;

(b)     Participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for Flash Memory;

(c)     Participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply Flash Memory to various customers;

(d)     Exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e)     Issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f)     Facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of Flash Memory sold.

90.     For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things that they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

91.     The contract, combination, and conspiracy alleged herein had the following effects, among others:

(a)     Prices paid by Plaintiffs and the members of the Classes for Flash Memory were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

(b)     Indirect purchasers of Flash Memory were deprived of the benefits of free and open competition; and

(c)     Competition between and among Defendants and their Co-Conspirators in the sale of Flash Memory was unreasonably restrained.

92.    As a result, Plaintiffs and the members of the Classes have been injured in their

businesses and property in that they have not only been deprived of the benefits of fair and open

competition on the merits but have paid more for Flash Memory than they otherwise would have

paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

93.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

fully set forth herein.

94.    Throughout the Class Period, Defendants and their Co-Conspirators engaged in a

successful, illegal price-fixing conspiracy that was by its nature self-concealing. Defendants

effectively, affirmatively, and fraudulently concealed their unlawful combination, conspiracy, and

acts in furtherance thereof from Plaintiffs and the members of the Classes.

95.    Although Plaintiffs exercised due diligence throughout the Class Period, they could

not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of

Defendants' effective, affirmative, and fraudulent concealment of their activities.  Defendants'

wrongful conduct was carried out in part through means and methods that were designed and

intended to avoid detection, and which in fact, successfully precluded detection.

96.    Defendants' fraudulent concealment included public statements that falsely

attributed wild price fluctuations of Flash Memory to natural reasons such as seasonal ebb and flow

and a highly competitive market.  Defendants also instructed their United States entities to offer

similar false reasons to explain price increases to customers in the United States.  In fact, those

fluctuations were due to Defendants periodic withholding of the supply of Flash Memory to create

an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

97.    Plaintiffs and the members of the Classes had no reason to disbelieve Defendants'

explanations for the pricing behavior of these products.  Indeed, in some instances Defendants'

1   explanations involved proprietary or otherwise non-public information within Defendants'

2   exclusive control, leaving Plaintiffs and the members of the Classes without means to verify their

3   accuracy. Plaintiffs did not know nor could they have known that Defendants' prices for Flash

4   Memory were artificially inflated and maintained by virtue of Defendant's illegal price-fixing

5   conspiracy and that Plaintiffs and members of the Classes were paying higher prices for Flash

6   Memory than they would have paid in a competitive market.

7

8       98.     Plaintiffs have exercised due diligence by promptly investigating the facts giving

9   rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants'

10  conspiracy, and by seeking discovery as to the matters asserted herein, to the extent permitted by

11  law.

12
                                    **COUNT ONE**
13              **(Injunctive Relief Under Section 16 of the Clayton Act for Defendants'**
                         **Violation of Section 1 of the Sherman Act)**
14

15      99.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

16  fully set forth herein.

17      100.    This claim is asserted on behalf of the Nationwide Class against all Defendants.

18      101.    Beginning by at least January 1, 1999 and continuing until the present, Defendants

19  entered into a continuing agreement, understanding, and conspiracy in restraint of interstate trade

20  and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which had the purpose

21  and effect of raising, fixing, maintaining, and/or stabilizing prices of Flash Memory at artificially

22
23  high, non-competitive levels in the United States.

24      102.    For the purpose of forming and effectuating the alleged agreements, understandings,

25  and conspiracies, Defendants and their Co-Conspirators did those things that they contracted,

26  combined and conspired to do, including:

27          (a.)    Agreeing among themselves to fix, raise, maintain and stabilize the price of

28

Flash Memory in the United States;

    (b.)    Agreeing among themselves to restrict the supply of Flash Memory by implementing and coordinating production curtailments at their Flash Memory production sites;

    (c.)    Agreeing among themselves to implement and coordinate increases in the prices of Flash Memory in the United States; and

    (d.)    Agreeing to conceal and keep secret their illegal agreements reached.

103.    The contracts, combinations and conspiracies alleged herein had the following effects, among others:

    (a.)    Price competition among the Defendants and their Co-Conspirators in the sale of Flash Memory has been restrained, suppressed and/or eliminated;

    (b.)    Prices for Flash Memory manufactured and sold by Defendants and their Co-Conspirators in the United States have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels; and

    (c.)    Those that purchased Flash Memory directly or indirectly from Defendants and their Co-Conspirators have been deprived of the benefits of free and open competition.

104.    As a direct and proximate result of the illegal contracts, combinations and conspiracies alleged herein, Plaintiffs and the members of the Nationwide Class were, and continue to be, damaged in their business or property by paying more for Flash Memory purchased indirectly from Defendants and their Co-Conspirators than they would have paid and will pay in the absence of the illegal contracts, combinations, and conspiracies.

105.    These violations are continuing and will continue unless enjoined by this Court. Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Nationwide Class seek

1    the issuance of an injunction against Defendants, preventing and restraining the violations alleged

2    herein.

3                                          **COUNT TWO**
4    **(Violation of the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, *et seq.*)**

5

6         106.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

7    fully set forth herein.

8         107.    This claim is asserted on behalf of the District of Columbia Indirect Purchaser Class

9    against all Defendants.

10        108.    During the Class Period, each of the Defendants, directly or indirectly and through

11   affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

12   the District of Columbia.

13
      109.    The Defendants and their Co-Conspirators engaged in a contract, combination, and
14

15   conspiracy in an unreasonable restraint of trade and commerce in violation of D.C. Code §§ 28-

16   4501, *et seq.* substantially affecting trade and commerce throughout the District of Columbia.

17        110.    During the Class Period, as a means of enabling the perpetuation of their monopoly,

18   Defendants engaged in the following conduct:

19
          (a.)    Illegal, anticompetitive practices, including those described herein;
20

21        (b.)    Combinations of capital, skill and acts with others with the intent, purpose, and

22                effect of creating and carrying out restrictions in trade and commerce;

23        (c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

24        (d.)    Restraining trade and preventing competition in the relevant markets for Flash

25                Memory.

26        111.    The aforesaid violations of D.C. Code §§ 28-4501, *et seq.*, consisted, without

27   limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-

28

---

Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Flash Memory.

112.    Defendants' contracts, combinations or conspiracies had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout the District of Columbia;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout the District of Columbia; and

(c.)    Plaintiffs and members of the District of Columbia Indirect Purchaser Class were deprived of free and open competition.

113.    Plaintiffs and members of the District of Columbia Indirect Purchaser Class paid supra-competitive, artificially inflated prices for Flash Memory.

114.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the District of Columbia Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of D.C. Code §§ 28-4501, *et seq.*, Plaintiff and the District of Columbia Indirect Purchaser Class seek treble damages, reasonable attorney's fees and costs of suit, and filing fees pursuant to D.C. Code §28-4508.

## COUNT THREE
**(Violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*)**

115.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

116.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Flash Memory was sold, distributed, or obtained in the District of Columbia.

117.    The foregoing conduct constitutes "unlawful trade practices" within the meaning of D.C. Code § 28-3904.

118.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and courses of conduct set forth above and including agreements:

(a.)    To fix, raise maintain and stabilize the price of Flash Memory;

(b.)    To allocate markets for Flash Memory amongst themselves; and

(c.)    To allocate the production of Flash Memory amongst themselves.

119.    Defendants' unlawful conduct had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout the District of Columbia;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout the District of Columbia;

(c.)    Plaintiffs and members of the District of Columbia Indirect Purchaser Class were deprived of free and open competition.

120.    The Defendants, acting in their position as the dominate global and domestic manufacturers of Flash Memory, through their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, the facts demonstrating the existence and effects of which having been set forth herein, place the Plaintiff and the members of the District of Columbia Indirect Purchaser Class in a grossly unequal bargaining position by foreclosing their ability to purchase Flash

1   Memory at unrestrained, uninflated, fair and competitive prices.

2       121.   As a direct and proximate result of Defendants' conduct, Plaintiff and members of

3   the District of Columbia Indirect Purchaser Class have been injured. As a result of Defendants'

4   violation of D.C. Code §§ 28-3901, *et seq.*, Plaintiff and the District of Columbia Indirect

5   Purchaser Class seek treble damages or $1,500 per violation, whichever is greater, as well as

6

7   reasonable attorney's fees and any additional relief as may be necessary to restore any money or

8   property, real or personal, which may have been acquired by means of Defendants' unlawful trade

9   practices pursuant to D.C. Code §§ 28-3905.

10

11                                  **COUNT FOUR**
        **(Violation of Florida's Deceptive and Unfair Trade Practices Act, F.S. §§ 501.201, *et seq.*)**

12
        122.   Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if
13
    fully set forth herein.
14

15      123.   This claim is asserted on behalf of the Florida Indirect Purchaser Class against all

16  Defendants.

17      124.   The Defendants and their Co-Conspirators committed actions that constitute unfair

18  and deceptive trade practices in violation of F.S. § 501.204, and substantially affecting trade and

19
    commerce throughout Florida.
20
        125.   During the Class Period, each of the Defendants, directly or indirectly and through
21
    affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in
22
23  Florida.

24      126.   During the Class Period, as a means of enabling the perpetuation of their monopoly,

25  Defendants engaged in the following conduct:

26      (a.)   Illegal, anticompetitive practices, including those described herein;

27
        (b.)   Combinations of capital, skill and acts with others with the intent, purpose, and
28

---

1    effect of creating and carrying out restrictions in trade and commerce;

2    (c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

3    (d.)    Restraining trade and preventing competition in the relevant markets for Flash

4    Memory.

5    127.    The aforesaid violations of F.S. § 501.204, consisted, without limitation, of a

6    continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators,

7    the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate

8    markets for Flash Memory.

9    128.    Defendants' unlawful conduct had the following effects:

10    (a.)    Flash Memory price competition was restrained, suppressed, and/or

11    eliminated throughout Florida;

12    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

13    artificially high, non-competitive levels throughout Florida;

14    (c.)    Plaintiff and members of the Florida Indirect Purchaser Class were deprived

15    of free and open competition.

18    129.    Plaintiff and members of the Florida Indirect Purchaser Class paid supra-

19    competitive, artificially inflated prices for Flash Memory.

20    130.    As a direct and proximate result of Defendants' unlawful and anticompetitive

21    practices, including combinations and contracts to restrain trade and monopolize the relevant

22    markets, Plaintiff and members of the Florida Indirect Purchaser Class have been injured in their

23    business and property in that they paid more for Flash Memory that they otherwise would have

24    paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of F.S.

25    §§ 501.201, *et seq.*, Plaintiff and the Florida Indirect Purchaser Class, seek actual damages in an

26    amount to be proved at trial pursuant to F.S. § 501.211, including attorney's fees and court costs as

1  provided in F.S. § 501.2105.

2                              **COUNT FIVE**
3               **(Violation of Iowa Competition Law §§ 553.1, *et seq.*)**

4        131.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

5  fully set forth herein.

6        132.    This claim is asserted on behalf of the Iowa Indirect Purchaser Class against all

7  Defendants.

8        133.    During the Class Period, Defendants and their Co-Conspirators committed actions
9
10 that constitute unfair and deceptive trade practices in violation of Iowa Competition Law §§ 553.1,

11 *et seq.* substantially affecting trade and commerce throughout Iowa.

12       134.    During the Class Period, each of the Defendants, directly or indirectly and through

13 affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

14 Iowa.

15       135.    During the Class Period, as a means of enabling the perpetuation of their monopoly,
16
17 Defendants engaged in the following conduct:

18       (a.)    Illegal, anticompetitive practices, including those described herein;

19       (b.)    Combinations of capital, skill and acts with others with the intent, purpose, and

20               effect of creating and carrying out restrictions in trade and commerce;

21       (c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

22       (d.)    Restraining trade and preventing competition in the relevant markets for Flash
23
               Memory.
24
25       136.    The aforesaid violations of Iowa Competition Law §§ 553.1, *et seq.*, consisted,

26 without limitation, of a continuing unlawful trust and concert of action among the Defendants and

27 their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the

28 prices of, and to allocate markets for Flash Memory.

137.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and courses of conduct set forth above and including agreements:

  (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

  (b.)    To allocate markets for Flash Memory amongst themselves; and

  (c.)    To allocate the production of Flash Memory amongst themselves.

138.    Defendants' unlawful conduct had the following effects:

  (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Iowa;

  (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Iowa; and

  (c.)    Plaintiffs and members of the Iowa Indirect Purchaser Class were deprived of free and open competition.

139.    Plaintiffs and members of the Iowa Indirect Purchaser Class paid supra-competitive, artificially inflated prices for Flash Memory.

140.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the Iowa Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Iowa Competition Law §§ 553.1, *et seq.*, Plaintiff and the Iowa Indirect Purchaser Class seek exemplary damages equal to twice the actual damages in an amount to be proved at trial, plus attorney's fees and court costs as provided under Iowa Competition Law § 553.12.

## COUNT SIX
### (Violation of the Kansas Antitrust Statutes, K.S.A. §§ 50-101 *et seq.*)

141.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

142.    This claim is asserted on behalf of the Kansas Indirect Purchaser Class against all Defendants.

143.    The Defendants and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Kansas antitrust statutes, K.S.A. §§ 50-101 *et seq.*, substantially affecting trade and commerce throughout Kansas.

144.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in Kansas.

145.    During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

(a.)    Illegal, anticompetitive practices, including those described herein;

(b.)    Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

(c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

(d.)    Restraining trade and preventing competition in the relevant markets for Flash Memory.

146.    The aforesaid violations of K.S.A. §§ 50-101 *et seq.*, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of,

1    and to allocate markets for Flash Memory.

2    147.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

3    Co-Conspirators have done those things which they combined and conspired to do, including but in

4    no way limited to the acts, practices and course of conduct set forth above and including

5    agreements:

7        (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

8        (b.)    To allocate markets for Flash Memory amongst themselves; and

9        (c.)    To allocate the production of Flash Memory amongst themselves.

10    148.    Defendants' unlawful conduct had the following effects:

11        (a.)    Flash Memory price competition was restrained, suppressed, and/or

12                eliminated throughout Kansas;

14        (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

15                artificially high, non-competitive levels throughout Kansas; and

16        (c.)    Plaintiffs and members of the Kansas Indirect Purchaser Class were deprived

17                of free and open competition.

18    149.    Plaintiffs and members of the Kansas Indirect Purchaser Class paid supra-

19    competitive, artificially inflated prices for Flash Memory.

20    150.    As a direct and proximate result of Defendants' unlawful and anticompetitive

21    practices, including combinations and contracts to restrain trade and monopolize the relevant

22    markets, Plaintiff and members of the Kansas Indirect Purchaser Class have been injured in their

23    business and property in that they paid more for Flash Memory than they otherwise would have

24    paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of

25    K.S.A. §§ 50-101 *et seq.*, Plaintiff and the Kansas Indirect Purchaser Class seek treble damages,

26    reasonable attorney's fees, filing fees, and reasonable costs of the action pursuant to K.S.A. § 50-

108.

## COUNT SEVEN
### (Violation of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*)

151.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

152.    This claim is asserted on behalf of the Kansas Indirect Purchaser Class against all Defendants.

153.    The foregoing conduct constitutes deceptive and unconscionable acts and practices within the meaning of K.S.A. § 50-623, *et seq.*

154.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

    (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

    (b.)    To allocate markets for Flash Memory amongst themselves; and

    (c.)    To allocate the production of Flash Memory amongst themselves.

155.    Defendants' unlawful conduct had the following effects:

    (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Kansas;

    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Kansas; and

    (c.)    Plaintiffs and members of the Kansas Indirect Purchaser Class were deprived of free and open competition.

156.    Defendants, by the design, intent and nature of their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, unconscionably took advantage of Plaintiff's and

members' of the Kansas Indirect Purchaser Class inability to know of and thus protect themselves from Defendants' deceptive and unconscionable acts and practices.

157.    Defendants, acting in their position as the dominate global and domestic manufacturers of Flash Memory, through their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, the facts demonstrating the existence and effects of which having been set forth herein, place Plaintiff and the members of the Kansas Indirect Purchaser Class in a grossly unequal bargaining position by foreclosing their ability to purchase Flash Memory at unrestrained, uninflated, fair and competitive prices.

158.    As a direct and proximate result of Defendants' unconscionable trade practice, Plaintiffs and members of the Kansas Indirect Purchaser Class have been injured. As a result of Defendants' violation of K.S.A. § 50-623, *et seq.*, Plaintiff and the Kansas Indirect Purchaser Class seek actual damages for losses suffered as a result Defendants' deceptive and unconscionable acts and practices, including reasonable attorney's fees provided for under K.S.A. § 50-634.

## COUNT EIGHT
### (Violation of the Maine Antitrust Laws, 10 M.R.S §§ 1101, *et seq.*)

159.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

160.    This claim is asserted on behalf of the Maine Indirect Purchaser Class against all Defendants.

161.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in Maine.

162.    The Defendants and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Maine

antitrust statutes, 10 M.R.S. §§ 1101, *et seq.*, and substantially affecting trade and commerce throughout Maine.

163. During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

(a.) Illegal, anticompetitive practices, including those described herein;

(b.) Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce; and

(c.) Increasing the price and limiting and reducing the supply of Flash Memory; and

(d.) Restraining trade and preventing competition in the relevant markets for Flash Memory.

164. The aforesaid violations of 10 M.R.S. §§ 1101, *et seq.*, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Flash Memory.

165. For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

(a.) To fix, raise maintain and stabilize the price of Flash Memory;

(b.) To allocate markets for Flash Memory amongst themselves; and

(c.) To allocate the production of Flash Memory amongst themselves.

166. Defendants' contracts, combinations or conspiracies had the following effects:

(a.) Flash Memory price competition was restrained, suppressed, and eliminated throughout Maine;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; and

(c.)    Plaintiffs and members of the Maine Indirect Purchaser Class were deprived of free and open competition.

167.    Plaintiffs and members of the Maine Indirect Purchaser Class paid supra-competitive, artificially inflated prices for Flash Memory.

168.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the Maine Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of 10 M.R.S. §§ 1101, et seq., Plaintiff and the Maine Indirect Purchaser Class seek treble damages and cost of suit, including necessary and reasonable investigative costs, reasonable experts' fees and reasonable attorney's fees as provided for in 10 M.R.S. §§ 1104. In addition, Plaintiffs and the Maine Indirect Purchaser Class seek all other damages available under the laws of Maine, including pre and post-judgment interest and all other and further relief the Court deems just and proper.

### COUNT NINE
**(Violation of the Maine Unfair Trade Practices Act, 5 M.R.S. § 205-A, *et seq.*)**

169.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

170.    This claim is asserted on behalf of the Maine Indirect Purchaser Class against all Defendants.

171.    The foregoing conduct constitutes unfair and/or deceptive methods of competition, acts and/or practices within the meaning of 5 M.R.S. § 205-A, *et seq.*

172. For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to engaging in unfair and/or deceptive methods, acts, practices and/or courses of conduct, as set forth above and including agreements:

    (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

    (b.)    To allocate markets for Flash Memory amongst themselves; and

    (c.)    To allocate the production of Flash Memory amongst themselves.

173. Defendants' unlawful conduct had the following effects:

    (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Maine;

    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Maine; and

    (c.)    Plaintiffs and members of the Maine Indirect Purchaser Class were deprived of free and open competition.

174. Defendants, acting in their position as the dominate global and domestic manufacturers of Flash Memory, through their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, the facts demonstrating the existence and effects of which having been set forth herein, placed and continue to place Plaintiff and the members of the Maine Indirect Purchaser Class in a position of being unable to reasonably avoid the effects of that conspiracy.

175. As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including their unlawful and/or deceptive methods, acts, practices, and/or courses of conduct, Plaintiff and members of the Maine Indirect Purchaser Class have been injured in their businesses and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful and/or deceptive conduct. As a result of Defendants'

violation of 5 M.R.S. § 205-A, *et seq.*, Plaintiff and the Maine Indirect Purchaser Class seek actual damages, restitution, reasonable attorney's fees and costs, as well as any other additional equitable relief the Court may deem appropriate as provided under 5 M.R.S. § 213.

## COUNT TEN
### Violation of the Michigan Antitrust Reform Act, M.C.L. §§ 445.771, *et seq.*)

176.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

177.    This claim is asserted on behalf of the Michigan Indirect Purchaser Class against all Defendants.

178.    The Defendants and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Michigan antitrust statutes, M.C.L. §§ 445.771, *et seq.*, substantially affecting trade and commerce throughout Michigan.

179.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in Michigan.

180.    During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

(a.)    Illegal, anticompetitive practices, including those described herein;

(b.)    Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

(c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

(d.)    Restraining trade and preventing competition in the relevant markets for Flash Memory.

181.    The aforesaid violations of M.C.L. §§ 445.771, *et seq.* consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Flash Memory.

182.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

    (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

    (b.)    To allocate markets for Flash Memory amongst themselves; and

    (c.)    To allocate the production of Flash Memory amongst themselves.

183.    Defendants' unlawful conduct had the following effects:

    (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Michigan;

    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Michigan; and

    (c.)    Plaintiff and members of the Michigan Indirect Purchaser Class were deprived of free and open competition.

184.    Plaintiff and members of the Michigan Indirect Purchaser Class paid supra-competitive, artificially inflated prices for Flash Memory.

185.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the Michigan Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have

1    paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of

2    M.C.L. §§ 445.771, *et seq.*, Plaintiff and the Michigan Indirect Purchaser Class seek treble

3    damages and the costs of suit, including reasonably attorneys' fees and reasonable costs of the

4    action pursuant to M.C.L. § 445.778(2).

5

6                                        **COUNT ELEVEN**

7            **(Violation of Minnesota's Antitrust Law Minn. Stat. §§ 425D.49, *et seq.*)**

8            186.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

9    fully set forth herein.

10           187.    This claim is asserted on behalf of the Minnesota Indirect Purchaser Class against

11   all Defendants.

12           188.    During the Class Period, each of the Defendants, directly or indirectly and through

13   affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

14

15   Minnesota.

16           189.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by

17   affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels the prices

18   at which Flash Memory was sold, distributed or obtained in Minnesota.

19           190.    By reason of the foregoing, Defendants formed contracts, combinations or

20   conspiracies in restraint of trade or commerce, in violation of Minnesota's Antitrust Law, Minn.

21   Stat. §§ 325D.49 *et seq.*

22

23           191.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

24   Co-Conspirators have done those things which they combined and conspired to do, including but in

25   no way limited to the acts, practices and course of conduct set forth above and including

26   agreements:

27               (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

28

---

CLASS ACTION COMPLAINT                                                                              47
53107

(b.)    To allocate markets for Flash Memory amongst themselves; and

(c.)    To allocate the production of Flash Memory amongst themselves.

192.    Defendants' contracts, combinations or conspiracies had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and eliminated throughout Minnesota;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; and

(c.)    Plaintiff and members of the Minnesota Indirect Purchaser Class were deprived of free and open competition.

193.    Plaintiff and members of the Minnesota Indirect Purchaser Class paid supra-competitive, artificially inflated prices for Flash Memory.

194.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and the Class members have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Minn. Stat. §§ 325D.49, *et seq*, Plaintiff and members of the Minnesota Indirect Purchaser Class seek treble damages in an amount to be proved at trial, including attorney's fees and court costs as provided under Minn. Stat. § 325D.57.

## COUNT TWELVE
### (Violation of the New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1, *et seq*.)

195.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

196.    This claim is asserted on behalf of the New Mexico Indirect Purchaser Class against

1    all Defendants.

2         197.    During the Class Period, each of the Defendants, directly or indirectly and through

3    affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

4    New Mexico.

5         198.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by

6    affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels the prices

7    at which Flash Memory was sold, distributed or obtained in New Mexico.

8

9         199.    By reason of the foregoing, Defendants formed contracts, combinations or

10   conspiracies in restraint of trade or commerce, in violation of the New Mexico Antitrust Act,

11   N.M.S.A. 1978, §§ 57-1-1, *et seq.*

12        200.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

13   Co-Conspirators have done those things which they combined and conspired to do, including but in

14   no way limited to the acts, practices and course of conduct set forth above and including

15   agreements:

16

17             (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

18             (b.)    To allocate markets for Flash Memory amongst themselves; and

19             (c.)    To allocate the production of Flash Memory amongst themselves.

20        201.    Defendants' contracts, combinations or conspiracies had the following effects:

21

22             (a.)    Flash Memory price competition was restrained, suppressed, and eliminated

23                     throughout New Mexico;

24             (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

25                     artificially high levels throughout New Mexico; and

26             (c.)    Plaintiffs and members of the New Mexico Indirect Purchaser Class were

27                     deprived of free and open competition; and

28

---

202.     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce by causing Plaintiffs and members of the New Mexico Indirect Purchaser Class to pay supra-competitive, artificially inflated prices for Flash Memory.

203.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the New Mexico Indirect Purchaser Class have been injured. Plaintiff and the members of the New Mexico Indirect Purchaser Class seek treble damages to be proved at trial, plus interest and costs, as a result of the wrongful conduct alleged in violation of the New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1, *et seq.*

## COUNT THIRTEEN
### (Violation of the New Mexico Unfair Practices Act, N.M.S.A. § 57-12-1, *et seq.*)

204.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

205.     This claim is asserted on behalf of the New Mexico Indirect Purchaser Class against all Defendants.

206.     The foregoing conduct constitutes "unconscionable trade practices" within the meaning of N.M.S.A. § 57-12-1, *et seq.*

207.     For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

> (a.)     To fix, raise maintain and stabilize the price of Flash Memory;

> (b.)     To allocate markets for Flash Memory amongst themselves; and

> (c.)     To allocate the production of Flash Memory amongst themselves.

208.     Defendants' unlawful conduct had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout New Mexico;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout New Mexico; and

(c.)    Plaintiffs and members of the New Mexico Indirect Purchaser Class were deprived of free and open competition.

209.    Defendants, by the design and intent of their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, intentionally took advantage, to a grossly unfair degree, Plaintiff's and members' of the New Mexico Indirect Purchaser Class lack of knowledge, ability to know, experience and/or capacity to learn of Defendants' unconscionable trade practice.

210.    Defendants, acting in their position as the dominate global and domestic manufacturers of Flash Memory, through their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, the facts demonstrating the existence and effects of which having been set forth herein, place Plaintiff and the members of the New Mexico Indirect Purchaser Class in a grossly unequal bargaining position by foreclosing their ability to purchase Flash Memory at unrestrained, uninflated, fair and competitive prices.

211.    As a direct and proximate result of Defendants' unconscionable trade practice, Plaintiffs and members of the New Mexico Indirect Purchaser Class have been injured. As a result of Defendants' violation of N.M.S.A. §57-12-1, *et seq.*, Plaintiff and the New Mexico Indirect Purchaser Class seek actual damages or $100 per violation, whichever is greater, and upon a finding of Defendants' willful violation of N.M.S.A. § 57-12-1, *et seq.*, seek treble damages or $300 per violation, whichever is greater, including attorney's fees and costs as provided under N.M.S.A. § 57-12-10.

## COUNT FOURTEEN
### (Violation of New York General Business Law § 349)

212.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

213.    This claim is asserted on behalf of the New York Indirect Purchaser Class against all Defendants.

214.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in New York.

215.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Flash Memory was sold, distributed or obtained in New York.

216.    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349. Defendants' actions resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

217.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

       (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

       (b.)    To allocate markets for Flash Memory amongst themselves; and

       (c.)    To allocate the production of Flash Memory amongst themselves.

218.    Defendants' unlawful conduct had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and eliminated throughout New York;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; and

(c.)    Plaintiff and members of the New York Indirect Purchaser Class were deprived of free and open competition.

219.    During the Class Period, Defendants' illegal conduct substantially affected New York commerce by causing Plaintiff and members of the New York Indirect Purchaser Class to pay supra-competitive, artificially inflated prices for Flash Memory.

220.    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in New York.

221.    Plaintiff and members of the New York Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, Plaintiffs and members of the New York Indirect Purchaser Class do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349 (h).

### COUNT FIFTEEN
#### (Violation of North Carolina General Statute § 75-1, *et seq.*)

222.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

223.    This claim is asserted on behalf of the North Carolina Indirect Purchaser Class against all Defendants.

224.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

1    North Carolina.

2        225.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by

3    affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels the prices

4    at which Flash Memory was sold, distributed or obtained in North Carolina.

5        226.    By reason of the foregoing, Defendants formed contracts, combinations or

6    conspiracies in restraint of trade or commerce, in violation of N.C. Gen. Stat. § 75-1, *et seq.*

7        227.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

8    Co-Conspirators have done those things which they combined and conspired to do, including but in

9    no way limited to the acts, practices and course of conduct set forth above and including

10   agreements:

11           (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

12           (b.)    To allocate markets for Flash Memory amongst themselves; and

13           (c.)    To allocate the production of Flash Memory amongst themselves.

14       228.    Defendants' contracts, combinations or conspiracies had the following effects:

15           (a.)    Flash Memory price competition was restrained, suppressed, and eliminated

                      throughout North Carolina;

16           (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

                      artificially high levels throughout North Carolina;

17           (c.)    Plaintiffs and members of the North Carolina Indirect Purchaser Class were

                      deprived of free and open competition; and

18           (d.)    Plaintiffs and members of the North Carolina Indirect Purchaser Class paid

                      supra-competitive, artificially inflated prices for Flash Memory.

19       229.    During the Class Period, Defendants' illegal conduct substantially affected North

     Carolina commerce.

230.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the North Carolina Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of N.C. Gen. Stat. § 75-1, *et seq.*, Plaintiff and the members of the North Carolina Indirect Purchaser Class seek treble damages, including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to North Carolina statute N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## COUNT SIXTEEN
**(Violation of South Dakota Antitrust Statutes, S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*)**

231.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

232.    This claim is asserted on behalf of the South Dakota Indirect Purchaser Class against all Defendants.

233.    The Defendants and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the South Dakota antitrust statutes, S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and substantially affecting trade and commerce throughout South Dakota.

234.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in South Dakota.

235.    During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

(a.)    Illegal, anticompetitive practices, including those described herein;

(b.)    Combinations of capital, skill and acts with others with the intent, purpose, and

1        effect of creating and carrying out restrictions in trade and commerce;

2    (c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

3    (d.)    Restraining trade and preventing competition in the relevant markets for Flash

4            Memory.

5

6    236.    The aforesaid violations of S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.* consisted,

7    without limitation, of a continuing unlawful trust and concert of action among the Defendants and

8    their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the

9    prices of, and to allocate markets for Flash Memory.

10    237.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

11    Co-Conspirators have done those things which they combined and conspired to do, including but in

12    no way limited to the acts, practices and course of conduct set forth above and including

13    agreements:

14

15    (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

16    (b.)    To allocate markets for Flash Memory amongst themselves; and

17    (c.)    To allocate the production of Flash Memory amongst themselves.

18    238.    Defendants' unlawful conduct had the following effects:

19    (a.)    Flash Memory price competition was restrained, suppressed, and/or

20            eliminated throughout South Dakota;

21

22    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

23            artificially high, non-competitive levels throughout South Dakota; and

24    (c.)    Plaintiff and members of the South Dakota Indirect Purchaser Class were

25            deprived of free and open competition.

26    239.    Plaintiff and members of the South Dakota Indirect Purchaser Class paid supra-

27    competitive, artificially inflated prices for Flash Memory.

28

240.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the South Dakota Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory that they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, Plaintiff and the South Dakota Indirect Purchaser Class seek treble damages, taxable costs, reasonable attorney's fees and other equitable relief the Court may deem appropriate pursuant to S.D. Codified Laws Ann. § 37-1-14.3.

## COUNT SEVENTEEN
**(Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statutes, S.D. Codified Laws Ann. §37-24, *et seq.*)**

241.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

242.    This claim is asserted on behalf of the South Dakota Indirect Purchaser Class against all Defendants.

243.    During the Class Period, Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as alleged herein, constituted unfair and/or deceptive methods of competition, acts and/or practices within the meaning of the South Dakota Deceptive Trade Practices and Consumer Protection statutes, S.D. Codified Laws Ann. §§ 37-24, *et seq.*

244.    During the Class Period, Defendants and their Co-Conspirators committed and continue to commit acts of unfair competition as alleged herein. This illegal conduct is continuing and there is no indication that Defendants will not continue such activity in the future.

245.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Defendants have caused and continue to cause Plaintiff and the members of the South

Dakota Indirect Purchaser Class to pay supra-competitive and artificially inflated prices for Flash Memory. Plaintiff and the members of the South Dakota Indirect Purchaser Class have suffered an ascertainable loss of money and/or property and have been deprived the benefits of free and fair competition on the merits. Plaintiff and the members of the South Dakota Indirect Purchaser Class seek restitution for acts that violate S.D. Codified Laws Ann. §§ 37-24, *et seq.*, as well as pre and post-judgment interest at the highest rate provided by law.

### COUNT EIGHTEEN
**(Violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451, *et seq.*)**

246.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

247.    This claim is asserted on behalf of the Vermont Indirect Purchaser Class against all Defendants.

248.    During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in Vermont.

249.    During the Class Period, Defendants engaged in a continuing combination and conspiracy in restraint of trade and commerce in violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451, *et seq.*

250.    The aforesaid violations of 9 V.S.A. §§ 2451, *et seq.*, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Flash Memory.

251.    During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

(a.)    Illegal, anticompetitive practices, including those described herein;

1
2

    (b.)    Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

3
4
5
6

    (c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

    (d.)    Restraining trade and preventing competition in the relevant markets for Flash Memory.

7
8
9
10
11

    252.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

    (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

12
13

    (b.)    To allocate markets for Flash Memory amongst themselves; and

14

    (c.)    To allocate the production of Flash Memory amongst themselves.

15

    253.    Defendants' unlawful conduct had the following effects:

16
17

    (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Vermont;

18
19
20

    (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Vermont; and

21
22

    (c.)    Plaintiff and members of the Vermont Indirect Purchaser Class were deprived of free and open competition.

23
24

    254.    Plaintiff and members of the Vermont Indirect Purchaser Class paid supra-competitive, artificially inflated prices or portions of the price for Flash Memory.

25
26
27
28

    255.    As a direct, proximate and foreseeable cause of Defendants' conduct in violation of 9 V.S.A. §§ 2451, *et seq.*, Plaintiff and members of the Vermont Indirect Purchaser Class have been damaged in their property in that the price or a portion of the price which they have paid for

or in respect of Flash Memory has been inflated to a supra-competitive level. Plaintiff and members of the Vermont Indirect Purchaser Class seek treble damages in an amount to be established at trial, including taxable costs and reasonable attorney's fees pursuant to 9 V.S.A. § 2461.

### COUNT EIGHTEEN
**(Violation of the West Virginia Antitrust Act, W. Va. Code §§ 47-18-1, *et seq*.)**

256.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

257.     This claim is asserted on behalf of the West Virginia Indirect Purchaser Class against all Defendants.

258.     The Defendants and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the West Virginia antitrust statutes, W. Va. Code §§ 47-18-1, *et seq.*, substantially affecting trade and commerce throughout West Virginia.

259.     During the Class Period, each of the Defendants, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in West Virginia.

260.     During the Class Period, as a means of enabling the perpetuation of their monopoly, Defendants engaged in the following conduct:

    (a.)     Illegal, anticompetitive practices, including those described herein;

    (b.)     Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

    (c.)     Increasing the price and limiting and reducing the supply of Flash Memory; and

    (d.)     Restraining trade and preventing competition in the relevant markets for Flash

1    Memory.

2    261.    The aforesaid violations of W. Va. Code §§ 47-18-1, *et seq.* consisted, without

3    limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-

4    Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of,

5    and to allocate markets for Flash Memory.

6    262.    For the purpose of forming and effectuating the unlawful trust, Defendants and their

7    Co-Conspirators have done those things which they combined and conspired to do, including but in

8    no way limited to the acts, practices and course of conduct set forth above and including

9    agreements:

10

11         (a.)    To fix, raise maintain and stabilize the price of Flash Memory;

12         (b.)    To allocate markets for Flash Memory amongst themselves; and

13         (c.)    To allocate the production of Flash Memory amongst themselves.

14    263.    Defendants' unlawful conduct had the following effects:

15

16         (a.)    Flash Memory price competition was restrained, suppressed, and/or

17                 eliminated throughout West Virginia;

18         (b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at

19                 artificially high, non-competitive levels throughout West Virginia;

20         (c.)    Plaintiff and members of the West Virginia Indirect Purchaser Class were

21                 deprived of free and open competition.

22

23    264.    Plaintiff and members of the West Virginia Indirect Purchaser Class paid supra-

24    competitive, artificially inflated prices for Flash Memory.

25    265.    As a direct and proximate result of Defendants' unlawful and anticompetitive

26    practices, including combinations and contracts to restrain trade and monopolize the relevant

27    markets, Plaintiff and members of the West Virginia Indirect Purchaser Class have been injured in

28

their business and property in that they paid more for Flash Memory that they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of W. Va. Code §§ 47-18-1, *et seq.*, Plaintiff and the West Virginia Indirect Purchaser Class seek treble damages, reasonable attorney's fees, filing fees and reasonable costs of the action as provided under W. Va. Code §§ 47-18-9.

**COUNT NINETEEN**
**(Violation of West Virginia Consumer Credit and Protection Act, W. Va. Code**
**§§ 46A-6-101, *et seq.*)**

266.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

267.    This claim is asserted on behalf of the West Virginia Indirect Purchaser Class against all Defendants.

268.    The foregoing conduct constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce", and has directly or indirectly affected the people of West Virginia within the meaning of W. Va. Code §§ 46A-6-102, *et seq.*

269.    During the Class Period, as a means of enabling the perpetuation of their unfair methods of competition and unfair or deceptive acts or practices, Defendants engaged in the following conduct:

(a.)    Illegal, anticompetitive practices, including those described herein;

(b.)    Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

(c.)    Engaging in conduct creating and fostering confusion and/or misunderstanding in the relevant markets for Flash Memory, including within West Virginia; and

(d.)    Restraining trade and preventing competition in the relevant markets for Flash Memory.

270.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

    (a.)    To fix, maintain and stabilize the price of Flash Memory;

    (b.)    To allocate markets for Flash Memory amongst themselves; and

    (c.)    To allocate the production of Flash Memory amongst themselves.

271.    Defendants' unlawful conduct had the following effects:

    (a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout West Virginia;

    (b.)    Flash Memory prices were fixed, maintained, and stabilized at artificial and non-competitive levels throughout West Virginia; and

    (c.)    Plaintiffs and members of the West Virginia Indirect Purchaser Class were deprived of free and open competition.

272.    Defendants, by the design and intent of their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, intentionally took advantage, to a grossly unfair degree, Plaintiff's and members' of the West Virginia Indirect Purchaser Class lack of knowledge, ability to know, experience and/or capacity to learn of Defendants' unfair methods of competition and unfair or deceptive acts or practices.

273.    Defendants, acting in their position as the dominate global and domestic manufacturers of Flash Memory, through their conspiracy to fix, raise, maintain and stabilize the price of Flash Memory, the facts demonstrating the existence and effects of which having been set forth herein, intentionally fostered confusion and/or misunderstanding in the relevant markets for Flash Memory thereby placing Plaintiff and the members of the West Virginia Indirect Purchaser

1    Class in a grossly unequal bargaining position by foreclosing their ability to purchase Flash

2    Memory at unrestrained, fair and competitive prices.

3        274.    As a direct and proximate result of Defendants' unfair methods of competition and

4    unfair or deceptive acts or practices, Plaintiff and members of the West Virginia Indirect Purchaser

5    Class have been injured. As a result of Defendants' violation of W. Va. Code §§ 46A-1-101, *et*

6    *seq.*, Plaintiff and the West Virginia Indirect Purchaser Class seek actual damages or $200 per

7    violation, whichever is greater, including any further equitable relief the Court may deem

8    appropriate as provided under W. Va. Code § 46A-6-106.

9

10

11                          **COUNT TWENTY**
                **(Violation of the Wisconsin Antitrust Act, Wis. Stat. § 133.01, *et seq.*)**

12        275.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

13    fully set forth herein.

14

15        276.    This claim is asserted on behalf of the Wisconsin Indirect Purchaser Class against

16    all Defendants.

17        277.    The Defendants and their Co-Conspirators have engaged in a contract, combination,

18    and conspiracy in an unreasonable restraint of trade and commerce in violation of the Wisconsin

19    antitrust statutes, Wis. Stat. § 133.01, *et seq.*, substantially affecting trade and commerce

20    throughout Wisconsin.

21

22        278.    During the Class Period, each of the Defendants, directly or indirectly and through

23    affiliates they dominated and controlled, manufactured, sold and/or distributed Flash Memory in

24    Wisconsin.

25        279.    During the Class Period, as a means of enabling the perpetuation of their monopoly,

26    Defendants engaged in the following conduct:

27        (a.)    Illegal, anticompetitive practices, including those described herein;

28

(b.)    Combinations of capital, skill and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce;

(c.)    Increasing the price and limiting and reducing the supply of Flash Memory; and

(d.)    Restraining trade and preventing competition in the relevant markets for Flash Memory.

280.    The aforesaid violations of Wis. Stat. § 133.01, *et seq.* consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Flash Memory.

281.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and including agreements:

(a.)    To fix, raise maintain and stabilize the price of Flash Memory;

(b.)    To allocate markets for Flash Memory amongst themselves; and

(c.)    To allocate the production of Flash Memory amongst themselves.

282.    Defendants' unlawful conduct had the following effects:

(a.)    Flash Memory price competition was restrained, suppressed, and/or eliminated throughout Wisconsin;

(b.)    Flash Memory prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Wisconsin; and

(c.)    Plaintiff and members of the Wisconsin Indirect Purchaser Class were deprived of free and open competition.

283.    Plaintiff and members of the Wisconsin Indirect Purchaser Class paid supra-

competitive, artificially inflated prices for Flash Memory.

284.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiff and members of the Wisconsin Indirect Purchaser Class have been injured in their business and property in that they paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Wis. Stat. § 133.01, *et seq.*, Plaintiff and the Wisconsin Indirect Purchaser Class seek treble damages in an amount to be proved at trial, including interest, costs and reasonable attorney's fees as provided under Wis. Stat. § 133.18, as well as all other damages available under relevant Wisconsin statutory and common law.

### COUNT TWENTY-ONE
### (Unjust Enrichment and Disgorgement of Profits)

285.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

286.    Defendants have been unjustly enriched and will continue to be unjustly enriched through overpayments by Plaintiffs and the members of the Indirect Purchaser Classes and the resulting profits enjoyed by the Defendants as a result of such overpayments. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

287.    It would be inequitable for Defendants to be permitted to retain the benefit of these overpayments conferred by Plaintiffs and members of Indirect Purchaser Classes, and retained by Defendants.

288.    Plaintiffs seek disgorgement of all ill-gotten profits resulting from Defendants' unlawful, unjust and inequitable conduct and establishment of a constructive trust from which

Plaintiffs and members of the Indirect Purchaser Classes may seek restitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.  Declare that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Classes as defined herein and further order notice of such action to all members of the Classes in the most effective and practicable manner;

2.  Find that Defendants, by participating in the contract, combination, and conspiracy alleged herein,

  (i)    acted in violation of Section 1 of the Sherman Act identified in Count One;

  (ii)   acted in violation of the state antitrust laws, consumer protection, unfair trade, and/or deceptive trade practices laws identified in Counts Two through Twenty;

  (iii)  were unjustly enriched as set forth in Count Twenty-One.

3.  Enjoin Defendants from continuing the illegal activities alleged herein;

4.  Award Plaintiff and the District of Columbia Indirect Purchaser Class treble damages, reasonable attorney's fees and costs of suit, and filing fees pursuant to D.C. Code §28-4508.,

5.  Award Plaintiff and the District of Columbia Indirect Purchaser Class treble damages or $1,500 per violation, whichever is greater, and any additional relief as the Court may find necessary pursuant to D.C. Code § 28-3905;

6.  Award Plaintiff and the Florida Indirect Purchaser Class actual damages in an amount to be proved at trial as pursuant to F.S. § 501.211, as well as attorney's fees and court costs as provided in F.S. § 501.2105;

7.    Award Plaintiff and the Iowa Indirect Purchaser Class exemplary damages equal to twice the actual damages in an amount to be proved at trial, plus attorney's fees and court costs as provided under Iowa Competition Law § 553.12;

8.    Award Plaintiff and the Kansas Indirect Purchaser Class treble damages, reasonable attorney's fees, filing fees, and reasonable costs of the action pursuant to K.S.A. § 50-108.

9.    Award Plaintiff and the Kansas Indirect Purchaser Class actual damages for losses suffered as a result Defendants' deceptive and unconscionable acts and practices, including reasonable attorney's fees provided for under K.S.A. § 50-634;

10.    Award Plaintiff and the Maine Indirect Purchaser Class treble damages and cost of suit, including necessary and reasonable investigative costs, reasonable experts' fees and reasonable attorney's fees as provided for in 10 M.R.S. §§ 1104. In addition, Plaintiffs and the Maine Indirect Purchaser Class seek all other damages available under the laws of Maine, including pre and post-judgment interest and all other and further relief the Court deems just and proper;

11.    Award Plaintiff and the Maine Indirect Purchaser Class actual damages, restitution, reasonable attorney's fees and costs, as well as any other additional equitable relief the Court may deem appropriate as provided in 5 M.R.S. § 213.

12.    Award Plaintiff and the Michigan Indirect Purchaser Class treble damages and the costs of suit, including reasonably attorneys' fees and reasonable costs of the action pursuant to M.C.L. § 445.778(2);

13.    Award Plaintiff and the Minnesota Indirect Purchaser Class treble damages in an amount to be proved at trial, including attorney's fees and court costs pursuant to Minn. Stat. § 325D.57;

14.    Award Plaintiff and the New Mexico Indirect Purchaser Class treble damages to be proved at trial, plus interest and costs, as a result of the wrongful conduct alleged in violation of the

1    New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1, et seq.;

2        15.    Award Plaintiff and the New Mexico Indirect Purchaser Class actual damages or

3    $100 per violation, whichever is greater, and upon a finding of Defendants' willful violation of

4    N.M.S.A. § 57-12-1, *et seq.*, treble damages or $300 per violation, including attorney's fees and

5    costs as provided under N.M.S.A. § 57-12-10;

6        16.    Award Plaintiff and the New York Indirect Purchaser Class actual damages in an

7    amount to be proved at trial, plus interest and costs, as a result of the wrongful conduct alleged in

8    violation of New York Gen. Bus. Law § 349 *et seq.*  Plaintiff expressly waives all other damages

9    available under N.Y. Gen. Bus. Law § 349(h);

10       17.    Award Plaintiff and the North Carolina Indirect Purchaser Class  treble damages,

11   including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to

12   North Carolina statute N.C. Gen. Stat.  §§ 75-16 and 75-16.1;

13       18.    Award Plaintiff and the South Dakota Indirect Purchaser Class treble damages,

14   taxable costs, reasonable attorney's fees and other equitable relief the Court may deem appropriate

15   pursuant to S.D. Codified Laws Ann. § 37-1-14.3, as well as restitution for acts that violate S.D.

16   Codified Laws Ann. §§ 37-24, *et seq.*, including pre and post-judgment interest at the highest rate

17   provided by law;

18       19.    Award Plaintiff and the Vermont Indirect Purchaser Class treble damages in an

19   amount to be established at trial, and including taxable costs and reasonable attorney's fees

20   pursuant to 9 V.S.A. § 2461;

21       20.    Award Plaintiff and the West Virginia Indirect Purchaser Class treble damages,

22   reasonable attorney's fees, filing fees and reasonable costs of the action as provided under W. Va.

23   Code §§ 47-18-9;

24       21.    Award Plaintiff and the West Virginia Indirect Purchaser Class seek damages or

1    $200 per violation, whichever is greater, including any further equitable relief the Court may deem

2    appropriate as provided under W. Va. Code § 46A-6-106;

3        22.    Award Plaintiff and the Wisconsin Indirect Purchaser Class treble damages in an

4    amount to be proved at trial, including interest, costs and reasonable attorney's fees as provided

5    under Wis. Stat. § 133.18, as well as all other damages available under relevant Wisconsin

6    statutory and common law.

7

8        23.    Award Plaintiffs and the Indirect Purchaser Classes restitution on a pro-rata basis,

9    including disgorgement of profits obtained by Defendants as a result of their acts of unfair

10    competition and acts of unjust enrichment;

11        24.    Award Plaintiffs and the Indirect Purchaser Classes pre-judgment and post-

12    judgment interest on the above sums at the highest rate provided by law;

13        25.    Allow Plaintiffs and the Classes to recover their reasonable attorneys' fees and

14    litigation costs as provided by law; and

15

16        26.    Grant such other and further relief as this Court deems to be necessary, proper just

17    and/or equitable.

18                        **JURY DEMAND**

19        Plaintiffs demand a trial by jury on all claims for which they are entitled to a jury trial.

20        Dated this 18th day of October, 2007.

21

22        By

23                        Daniel E. Birkhaeuser
                        Daniel E. Birkhaeuser (Ca Bar No. 136646)
24                        Jennifer S. Rosenberg (Ca Bar No. 121023)
                        BRAMSON, PLUTZIK, MAHLER &
25                        BIRKHAEUSER, LLP
                        2125 Oak Grove Road, Suite 120
26                        Walnut Creek, CA 94598
                        Telephone: (925) 945-0200
27                        Facsimile: (925) 945-8792

28

1

and

2
David Boies, III, Esq.
Timothy D. Battin, Esq.

3
Ian Otto, Esq.
Nathan Cihlar, Esq.

4
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor

5
Fairfax, Virginia 22030
Telephone: (703) 764-8700

6
Facsimile: (703) 764-8704

7

8
Mark Schirmer
STRAUS & BOIES, LLP
1661 International Drive

9
Suite 400
Memphis, TN 38120

10
Telephone: (901) 818-3146
Facsimile: (901) 818-3147

11

12
Jeffrey Bartos
GUERRIERI, EDMOND, CLAYMAN &
BARTOS PC

13
1625 Massachusetts Ave, NW
Suite 700

14
Washington, DC 20036
Telephone: (202) 624-7400

15
Facsimile: (202) 624-7420

16

17
Justin LaVan
LAMARCA & LANDRY, PC
1820 NW 118th Street

18
Suite 200
Des Moines, IA 50325

19
Telephone: (515) 327-7469
Facsimile: (515) 225-8581

20

21
Angela Drake
LOWTHER JOHNSON, LLC
901 St. Louis Street

22
20th Floor
Springfield, MO 65806

23
Telephone: (417) 866-7777
Facsimile: (417) 866-1752

24

25
Andrew Nickelhoff
Marshal Widick

26
SACHS WALDMAN, PC
1000 Farmer Street

27
Detroit, MI 48226
Telephone: (313) 965-3464

28
Facsimile: (313) 965-4315

David Freedman
Dana Grubesic
FREEDMAN, BOYD, HOLLANDER,
GOLDBERG & IVES, PA
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960
Facsimile: (505) 842-0761

James F. Wyatt, III
WYATT & BLAKE, LLP
435 East Morehead Street
Charlotte, NC 28202-2609
Telephone: (704) 331-0767
Facsimile: (704) 331-0773

Eric Pickar
BANGS, MCCULLEN, BUTLER, FOYE &
SIMMONS, L.L.P.
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone: (605) 343-1040
Facsimile: (605) 343-1503

Michael G. Simon
Kevin M. Pearl
M. Eric Frankovitch
FRANKOVITCH, ANETAKIS,
COLANTONIO & SIMON
337 Penco Rd.
Weirton, WV 26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892

Susan LaCava
SUSAN LACAVA, SC
23 N. Pinckney St.
Suite 300
Madison, WI 53703
Telephone: (608) 258-1335
Facsimile: (608) 258-1669